1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   PATRICK K GIBSON,

11                              Plaintiff,

12          v.

13   DALE FETROE, EDITH KROHA,

14                              Defendants.

CASE NO. 3:17-CV-05187-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: April 13, 2018

15          The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United

16   States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants

17   Dale Fetroe and Edith Kroha's Motion for Summary Judgment. Dkt. 25.

18          After reviewing the relevant record, the Court finds Plaintiff Patrick K. Gibson failed to

19   exhaust his administrative remedies regarding the claim that Defendant Kroha falsified

20   Plaintiff's medical records, but exhausted his administrative remedies regarding his claim that

21   Defendants acted with deliberate indifference when they failed to timely submit his Department

22   of Labor and Industries ("L&I") claim. The Court concludes Plaintiff has, however, failed to

23   overcome Defendants' summary judgment showing that there is no genuine issue of material fact

24

regarding the claims that Defendants acted with deliberate indifference to Plaintiff's serious

medical needs by: delaying the submission of Plaintiff's L&I claim following a work-related

injury, providing inadequate treatment for Plaintiff's injury, and failing to follow DOC policy. The

Court also finds Plaintiff failed to state a claim for which relief can be granted as to the

allegations that Defendants verbally threatened Plaintiff. Therefore, the Court recommends

Defendants' Motion for Summary Judgment (Dkt. 25) be granted and this case be closed.

## I.    Background

Plaintiff, an inmate housed at the Clallam Bay Corrections Center ("CBCC"), alleges

Defendants violated his Eighth Amendment rights when they delayed in submitting Plaintiff's L&I

claim for his work-related injury. Dkt. 14. Plaintiff contends he sustained an umbilical hernia when

he lifted a sewing machine while working at CBCC. *Id*. Defendant Kroha delayed in submitting

the L&I claim after she diagnosed his hernia and Defendant Fetroe, as Defendant Kroha's

supervisor, should have been reasonably aware of the delay. *Id*. Because of the delay in submitting

the L&I claim, Plaintiff suffered pain and emotional distress. *Id*.

Defendants filed the Motion on December 6, 2017. Dkt. 23. Plaintiff filed a Response to

the Motion on January 29, 2018. Dkt. 40. Defendants filed their Reply on March 2, 2018. Dkt. 41.

## II.    Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.    Discussion

Defendants allege Plaintiff failed to exhaust the administrative remedies available to him as to the claims alleged against Defendant Kroha. Dkt. 25. Defendants also assert there is no genuine issue of material fact regarding whether Defendants Fetroe and Kroha acted with deliberate indifference to Plaintiff's serious medical needs. *Id.*

### A.  Exhaustion of Administrative Remedies

First, Defendants argue Plaintiff failed to exhaust the administrative remedies available to him regarding the claims alleged against Defendant Kroha. Dkt. 25. Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all*

1    levels of an available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter*

2    *v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in

3    grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*,

4    532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d

5    1198, 1199 (9th Cir. 2002).

6        Failure to exhaust administrative remedies is properly brought as a summary judgment

7    motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was

8    an available administrative remedy and the offender failed to exhaust the available remedy, the

9    burden shifts to the plaintiff. The plaintiff must show there was something about his particular

10   claim which made the "existing and generally available administrative remedies effectively

11   unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (*citing Hilao v.*

12   *Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

13       Here, Defendants' evidence shows prisoners in the custody of the Washington State

14   Department of Corrections ("DOC") may file administrative grievances pertaining to several

15   routine matters, including conditions of confinement, staff conduct, or retaliatory conduct. Dkt. 26,

16   Citrak Dec, ¶ 5; Dkt. 26, p. 16. Prisoners may also file emergency grievances when there is a

17   potentially serious threat to the life or health of an inmate or staff member, or there is a potential

18   threat to the orderly operation of a facility. Dkt. 26, p. 14. Under DOC policy, the grievance

19   procedure consists of four levels of review. Dkt. 26, Citrak Dec., ¶ 7. Both routine and emergency

20   grievances are initially filed at Level 0. *Id*. At Level 0, the facility's "grievance coordinator pursues

21   informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the

22   offender requesting additional information, or accepts the complaint and processes it as a formal

23   grievance." *Id*. After satisfactory review of the informal grievance at Level 0, the grievance

24

1  coordinator accepts routine and emergency grievances as formal grievances at Level I and

2  complaints alleging staff misconduct at Level II. *Id.*

3      If the grievance proceeds beyond Level 0, the local grievance coordinator issues a response

4  at Level I. *Id.*; Dkt. 26, p. 25. A prisoner may appeal the denial of either a routine or emergency

5  grievance to the superintendent of the facility at Level II. *See* Dkt. 26, Citrak Dec., ¶ 7; *see also*

6  Dkt. 26, pp. 25, 29. "Inmates may appeal all Level II responses, except emergency grievances, to

7  Department headquarters in Tumwater, where they are re-investigated" at Level III. Dkt. 26, Citrak

8  Dec., ¶ 7. Level III is the final level of review. *See id.*

9      1.  *Failure to Submit L&I Claim*

10      Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs when

11  they failed to timely submit his L&I claim. Defendants' evidence shows Plaintiff filed Grievance

12  Number 16604463 complaining generally of his "non-receipt of surgery for his umbilical hernia."

13  Dkt. 26, Citrak Dec., ¶ 13. Plaintiff filed this grievance through all four levels of the grievance

14  process. *Id.* Defendants contend that, because Plaintiff did not name Defendant Kroha in this

15  grievance, he did not properly exhaust this claim. *See id.*; *see also* Dkt. 25.

16      In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held "that a prison's own

17  grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the

18  PLRA exhaustion requirement." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "[W]hen a

19  prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices

20  if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* (internal quotations

21  omitted). Further, the Ninth Circuit has held that a claim is exhausted "[w]hen prison officials opt

22  not to enforce a procedural rule but instead decide an inmate's grievance on the merits." *Reyes v.*

23  *Smith*, 810 F.3d 654, 657-58.

24

REPORT AND RECOMMENDATION - 5

1    In Grievance Number 16604463, Plaintiff complained that the medical department did not

2    properly fill out and submit his L&I claim. *See* Dkt. 26, p. 59, 62, 67. Plaintiff named Defendant

3    Kroha in the Level II appeal and named Defendant Fetroe in the Level III appeal. Dkt. 26, p. 59,

4    62. Plaintiff also referred to the medical department at all levels of the grievance process, which is

5    where Defendants worked. *Id*. at pp. 59, 62, 67.

6    Under the Offender Grievance Program Manual ("Manual"), an inmate is required identify

7    the name of all individuals involved in the grieved matter. Dkt. 26, p. 21. Here, Plaintiff did not

8    identify Defendants Kroha or Fetroe at each level of the grievance process as directed in the

9    Manual. However, CBCC, ignoring the procedural rule, decided Grievance Number 16604463 on

10   the merits at each step of the grievance process regardless of Plaintiff failing to specifically name

11   all individuals involved in the matter. As CBCC ignored a procedural rule requiring Plaintiff to

12   name all individuals involved in the grieved issue, Defendants cannot now assert Plaintiff failed to

13   properly exhaust the administrative remedies. Therefore, the Court finds Plaintiff exhausted the

14   administrative remedies available to him as to the claim that Defendants were deliberately

15   indifferent to his serious medical needs when they failed to timely submit his L&I claim. *See*

16   *Reyes*, 810 F.3d at 657-58 (finding the prisoner exhausted the administrative remedies when the

17   prison officers did not enforce a procedural rule requiring an inmate to list all staff members and

18   their involvement in the issue).

19        2.   *Fabrication of Medical Records Claim*

20   In the Amended Complaint, Plaintiff also alleges that Defendant Kroha fabricated his

21   medical records related to a June 2015 examination. *See* Dkt. 14. The evidence shows Plaintiff

22   filed Grievance Number 16623476 complaining that Defendant Kroha refused to correct fabricated

23   statements related to a June 2015 examination. Dkt. 16, Citrak Dec., ¶¶ 11-12; *see also* Dkt. 26, pp.

24

41, 45. He did not pursue this grievance through Level III; he withdrew it. Dkt. 26, Citrak Dec., ¶ 12. Grievance Number 16623476 was therefore not properly exhausted through the grievance process. *See id*. Plaintiff did not exhaust any other grievance related to Defendant Kroha's alleged falsification of medical records. *See* Dkt. 16, Citrak Dec.; Dkt. 26.

Based on the evidence, the Court finds Defendants have carried the initial burden of showing the absence of exhaustion as to the claim that Defendant Kroha falsified medical records. The undisputed evidence presented by Defendants show there was a grievance procedure in place at the time of the alleged falsification of the medical report. Plaintiff was aware of the grievance process and participated in the grievance process while housed at CBCC. Plaintiff, however, did not complete the grievance process for the claim that Defendant Kroha falsified his medical record.

The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). In his unsworn Response, Plaintiff does not assert he exhausted the claim that Defendant Kroha falsified a June 2015 medical record. *See* Dkt. 40. Therefore, the unrefuted evidence shows Plaintiff never completed Level III when grieving that Defendant Kroha falsified the medical record. *See* Dkt. 26, Citrak Dec., ¶¶ 11-12; Dkt. 26.

As Plaintiff did not fully follow the proper grievance procedures available at CBCC, he has not overcome Defendants' showing that he failed to exhaust administrative remedies available to him regarding the claim that Defendant Kroha falsified medical records regarding his June 2015 medical examination. Thus, the Court concludes Plaintiff failed to properly exhaust the administrative remedies available to him regarding the claim that Defendant Kroha falsified

1  medical records regarding Plaintiff's June 2015 medical examination. Accordingly, this claim

2  should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003)

3  *overruled on other grounds by Albino,* 747 F.3d at 1162.

4      3.  *Conclusion*

5      For the above stated reasons, the Court finds Plaintiff properly exhausted the

6  administrative remedies regarding the claims against Defendants for their alleged failure to

7  timely submit his L&I claim. The Court also finds Plaintiff did not properly exhaust the claim

8  against Defendant Kroha for falsifying his medical records following a June 2015 examination.

9      B.  Summary Judgment: Issue of Material Fact

10     The Court has determined Plaintiff exhausted his administrative remedies regarding

11  Plaintiff's allegations that Defendants acted with deliberate indifference to Plaintiff's serious

12  medical needs when they failed to timely submit his L&I claim. Therefore, the Court will

13  analyze Defendants' argument that the claims of deliberate indifference to Plaintiff's serious

14  medical need alleged against Defendants should be dismissed because no genuine issue of

15  material fact exists. *See* Dkt. 25.

16     1.  *Legal Standard*

17     Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

18  and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

19  omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

20  has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

21  defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991),

22  *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en

23  banc).

24

1    A medical need is serious "if the failure to treat the prisoner's condition could result in

2    further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

3    F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

4    doctor or patient would find important and worthy of comment or treatment; the presence of a

5    medical condition that significantly affects an individual's daily activities; or the existence of

6    chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

7    medical treatment." *Id.* at 1059-1060.

8        If a plaintiff shows he suffered from a serious medical need, he must then show the

9    prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834.

10   Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure

11   to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant

12   must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A

13   prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious

14   medical needs "unless the official knows of and disregards an excessive risk to inmate health or

15   safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the

16   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

17   inference." *Id.*

18       Deliberate indifference "may appear when prison officials deny, delay or intentionally

19   interfere with medical treatment, or [ ] may be shown by the way in which prison physicians

20   provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). If the prison's

21   medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they

22   must "refer prisoners to others who can." *Hoptowit*, 682 F.2d at 1253; *see also Ortiz v. City of*

23   *Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam); *Toussaint v. McCarthy*, 801 F.2d

24

1   1080, 1111-12 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515

2   U.S. 472 (1995).

3   However, "[m]ere negligence in diagnosing or treating a medical condition, without

4   more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson*, 838 F.2d at 394. The

5   Court also recognizes mere differences of opinion between a prisoner and prison medical staff or

6   between medical professionals regarding the proper course of treatment does not give rise to a §

7   1983 claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim

8   involving choices between alternative courses of treatment, a prisoner must show that the chosen

9   course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

10  conscious disregard of an excessive risk to [the prisoner's] health.'" *Id*. (*citing Jackson v.

11  McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

12      2.  *Evidence*

13          a.  Defendants' Evidence

14  Defendants' evidence shows Plaintiff was seen by Defendant Kroha, an advanced

15  registered nurse practitioner ("ARNP") at CBCC, on June 3, 2015 for complaints of a workplace

16  injury in his mid-abdomen. Dkt. 27, Kroha Dec., ¶ 5; Dkt. 27, p. 11. Defendant Kroha diagnosed

17  an umbilical hernia. Dkt. 27, Kroha Dec., ¶ 5; Dkt. 27, p. 11. Plaintiff did not report pain and he

18  did not appear to be in distress. Dkt. 27, Kroha Dec., ¶ 5; Dkt. 27, p. 11. Defendant Kroha

19  determined the hernia was reducible and unincarcerated.[1] Dkt. 27, Kroha Dec., ¶ 5; Dkt. 27, p.

20  11. Defendant Kroha's plan for treatment was to submit the information to L&I and she informed

21  Plaintiff to return to the medical department if the hernia became larger, he had nausea or

22

23  _____

24  [1] An unincarcerated umbilical hernia is a hernia that does not get caught (incarcerated) or get strangulated (incarceration interfering with blood flow). *See* Dkt. 28, Fetroe Dec., ¶ 8.

1   vomiting, or he was unable to reduce the hernia. *Id*. She also directed Plaintiff to lift no more

2   than ten pounds. Dkt. 27, Kroha Dec., ¶ 5; Dkt. 27, p. 11.

3          After examining Plaintiff, Defendant Kroha "made notations on what [she] understood to

4   be [her] portion of a 'Report of Accident' form for submission to the Department of Labor and

5   Industries." Dkt. 27, Kroha Dec., ¶ 6. Defendant Kroha left the form with Plaintiff's "health care

6   file in the 'in-basket,' so that it would be made available to [Plaintiff] through professional staff

7   in the health care unit to complete his part of the form." *Id*. It was Defendant Kroha's

8   expectation the Report of Accident form was being sent to Plaintiff for completion and

9   submission. *Id*.

10         Defendant Kroha did not have any additional encounters with Plaintiff in the health care

11  unit for the rest of 2015. Dkt. 27, Kroha Dec., ¶ 7. In December of 2015, Plaintiff sent an inmate

12  request form ("kite") alleging there were falsifications in his medical records. *Id*. There was no

13  indication Plaintiff had not heard from L&I regarding his claim and he did not ask questions

14  about his claim. *Id*. Evidence shows Plaintiff wrote a letter to L&I on December 28, 2015, to

15  which L&I responded on January 21, 2016, stating it had not received a claim for his injury. Dkt.

16  30, p. 5. L&I contacted CBCC regarding the claim and directed Plaintiff to coordinate with the

17  medical department to complete a report of accident form. *Id*.

18         In late January 2016, Defendant Kroha was notified Plaintiff's Report of Accident had

19  not been sent to L&I. Dkt. 27, Kroha Dec., ¶ 8. Defendant Kroha "pulled [Plaintiff's] health care

20  record and learned that the form [Defendant Kroha] started on June 3, 2015 did not get

21  completed and sent to the Department of Labor and Industries. . . . It was stuck to [Plaintiff's]

22  medical record, not sent." Dkt. 27, Kroha Dec., ¶ 8. Defendant Kroha's "best recollection is that

23  after [she] found the incomplete form from June 2015 in [Plaintiff's] medical file in January

24

2016, [she] sent it to [Plaintiff] to get completed." *Id.* at ¶ 10. The L&I claim form was submitted on January 28, 2016. *Id.* at ¶ 8.

Plaintiff's claim was accepted by L&I on February 4, 2016. *See* Dkt. 30, p. 8. On March 8, 2016, Defendant Kroha and Defendant Fetroe, who was the CBCC medical director, conducted an examination of Plaintiff regarding his hernia. *See* Dkt. 27, Kroha Dec., ¶ 12; Dkt. 28, Fetroe Dec., ¶¶ 5, 7. Defendant Fetroe detailed the area of the hernia with a pen on Plaintiff's abdomen and took photographs for the surgeon conducting the surgery consultation. Dkt. 28, Fetroe Dec., ¶ 7. Plaintiff complained of pain at times and blood in his stools during the previous two months. Dkt. 27, Kroha Dec., ¶ 12. Defendant Kroha directed tests as a result of Plaintiff's reports of blood in his stool. *Id*. The blood tests were within normal limits and the stool test was negative. Dkt. 27, p. 18.

At the March 8, 2016 examination, Plaintiff's hernia was self-reducible, placing it at the lowest level of risk. Dkt. 28, Fetroe Dec., ¶ 8. Plaintiff did not demonstrate that he was in pain or demonstrate signs of distress, and he was working at his job almost daily. *Id*.; Dkt. 27, Kroha Dec., ¶ 12; *see* Dkt. 29. Defendant Fetroe saw no indication that Plaintiff "presented with something other than a reducible, unincarcerated umbilical hernia." Dkt. 28, Fetroe Dec., ¶ 8; *see* Dkt. 27, Kroha Dec., ¶ 12. It was Defendant Fetroe's medical opinion that Plaintiff's hernia was not a condition that required immediate care or surgery, and that the elective surgery would not be covered under the DOC's Offender Health Plan. Dkt. 28, Fetroe Dec., ¶ 8. Plaintiff indicated he wanted to have the hernia surgically repaired, as authorized and funded by L&I. Dkt. 28, Fetroe Dec., ¶ 9. Defendant Kroha informed Plaintiff that there was a question regarding who would pay for transportation and security during the surgery. Dkt. 27, Kroha Dec., ¶ 12. Defendant Fetroe agreed with Defendant Kroha's comment regarding payment. *Id*. However,

REPORT AND RECOMMENDATION - 12

1    subsequent to the March 8, 2016 examination, Defendant Kroha learned that approval from the

2    DOC's Care Review Committee  was not necessary for transportation and security in Plaintiff's

3    case. *Id*.

4        L&I authorized a surgical consult for Plaintiff's hernia on May 18, 2016. Dkt. 28, Fetroe

5    Dec., ¶ 10. The Care Review Committee approved the consultation and, on June 10, 2016,

6    Plaintiff had a consultation appointment with non-party Dr. Charles Bundy. *Id*. Plaintiff had

7    surgery to repair the hernia on July 7, 2016 and a post-operative appointment with Dr. Bundy on

8    July 14, 2016. *Id*.

9        Defendant Kroha stated that she regrets Plaintiff's referral to L&I was delayed because

10    the completed Report of Accident did not get submitted to the agency; however, "it was not [her]

11    intention to delay his referral." Dkt. 27, Kroha Dec., ¶ 16. Defendant Kroha also stated that the

12    time between the claim submission and surgery was reasonable. Dkt. 40, p. 41.

13        b.  Plaintiff's Evidence

14        Plaintiff's evidence shows he was injured while working for Correctional Industries on

15    April 30, 2015. Dkt. 39, Plaintiff Dec., ¶ 3. His injury, the hernia, did not appear until several

16    weeks later. *Id*. at ¶¶ 5-7. Plaintiff informed his supervisor on May 29, 2015 and, on June 3,

17    2015, he was sent to the medical department and was examined by Defendant Kroha. *Id*. at ¶¶ 6-

18    8. Defendant Kroha "did not ask, suggest or supply [Plaintiff] with the L&I claim form to fill out

19    during her examination of [Plaintiff's] injury." *Id*. at ¶ 9.

20        On December 19, 2016, six and a half months after the examination with Defendant

21    Kroha, Plaintiff sent a kite to the medical department requesting surgery to fix his hernia. Dkt.

22    39, Plaintiff Dec., ¶ 13. Non-party Ms. Peterson respond to the kite, explaining the L&I

23    paperwork should have been filled out and instructing Plaintiff to contact L&I. *Id*. Plaintiff was

24

1  unable to obtain information regarding his L&I claim from the CBCC medical department or his

2  work supervisors. *Id*. at ¶ 13. Plaintiff obtained information to contact L&I and wrote a letter to

3  the director of L&I on December 28, 2015. *Id*. at ¶ 14.

4      During the first two weeks of January 2016, Plaintiff was informed by his work

5  supervisor that the medical department had not submitted his L&I paperwork. *Id*. at ¶ 15. On two

6  occasions, Plaintiff's supervisor requested the medical department issue a "call-out" for Plaintiff

7  to go to the medical department to complete the L&I paperwork. *Id*. at ¶¶15-16. The medical

8  department did not issue a "call-out." *Id*. Then, on January 21, 2016, Plaintiff's supervisor

9  assisted Plaintiff in filling out a blank L&I form. *Id*. at ¶17. Plaintiff contends his supervisor took

10 the form to the medical department and, on January 28, 2016, Defendant Kroha completed the

11 medical portion of the form and submitted it to L&I. *Id*.

12     Plaintiff was seen by both Defendants on March 8, 2016. Dkt. 39, Plaintiff Dec., ¶ 20.

13 Defendants inferred that they had no knowledge of why they were examining Plaintiff and were

14 intentionally "playing dumb" regarding why Plaintiff was at the medical call-out. *Id*. Defendant

15 Fetroe informed Plaintiff that the DOC would not approve treatment for Plaintiff's hernia and

16 Defendant Kroha told Plaintiff the DOC would not pay for security/transportation costs. *Id*. at ¶

17 21. Plaintiff took these statements as a threat that Defendants would prevent Plaintiff from

18 receiving surgery to repair his hernia. *Id*. While Defendants found the hernia to be

19 unincarcerated, three months later, Dr. Bundy's notes stated Plaintiff's hernia was incarcerated.

20 *See* Dkt. 40-2, p. 4.

21     Plaintiff never requested pain medication from the prison medical department. Dkt 39,

22 Plaintiff Dec., ¶ 28. Plaintiff also stated he did not return to the medical department after he

23 started experiencing pain associated with his hernia because he was waiting for his L&I claim to

24

1    be approved. *Id.* at ¶ 29. Had he known the claim had not been filed, he would have returned to

2    the medical department. *Id.*

3        3.  *Analysis*

4            a.  Failure to Timely Submit L&I Claim

5        In the Amended Complaint, Plaintiff alleges Defendants acted with deliberate

6    indifference to Plaintiff's serious medical need when they failed to submit the L&I claim

7    immediately after Defendant Kroha examined Plaintiff for his work-related injury. *See* Dkt. 14.

8                i.  Defendant Kroha

9        The evidence, viewed in the light most favorable to Plaintiff, shows Defendant Kroha

10   filled out the medical portion of the L&I form the day after she examined Plaintiff. She placed

11   the L&I form in Plaintiff's medical file with the expectation that it would be provided to Plaintiff

12   for him to complete. The form was not provided to Plaintiff; rather, it was "stuck" to a medical

13   record in his medical file. There is no evidence showing Defendant Kroha intentionally failed to

14   submit the L&I form. Rather, she expected the form to be provided to and completed by Plaintiff

15   and was unaware Plaintiff did not receive the form. Thus, there is no evidence refuting

16   Defendants' showing that Defendant Kroha did not act with deliberate indifference when she

17   failed to submit the L&I form immediately following her June 2015 examination of Plaintiff.

18       Defendant Kroha testified that once she found the incomplete form in January of 2016,

19   she sent it to Plaintiff to be completed. Plaintiff's evidence shows that Plaintiff completed a

20   blank L&I form that was provided to him by his work supervisor. His work supervisor then took

21   the L&I form to the medical department to be completed and sent to L&I. While there is disputed

22   evidence regarding how the L&I form was completed after CBCC staff became aware that the

23

24

REPORT AND RECOMMENDATION - 15

1   claim had not been submitted to L&I, this dispute is immaterial and does not create a genuine

2   issue of material fact.

3      There is no evidence showing Defendant Kroha intentionally failed to provide Plaintiff

4   with the L&I form after CBCC realized the L&I claim had not been submitted. At most,

5   Plaintiff's evidence shows Plaintiff's work supervisor requested the medical department call

6   Plaintiff to the medical department to complete the form, but the medical department failed to do

7   so. There is no evidence Defendant Kroha was aware of the call-out request and refused to call

8   Plaintiff to the medical department. Therefore, any factual dispute over the way in which the

9   L&I claim was completed does not raise a genuine issue of material fact as to whether Defendant

10  Kroha acted with deliberate indifference after CBCC learned the L&I claim had not been

11  submitted.

12     After Defendant Kroha received Plaintiff's completed portion of the L&I form, she

13  submitted it to L&I. While Plaintiff alleges it took Defendant Kroha from January 21, 2016 until

14  January 28, 2016 to submit the L&I claim, there is no evidence showing when Defendant Kroha

15  received Plaintiff's portion of the L&I form or that she delayed in submitting the form to L&I.

16  As such, there is no evidence showing Defendant Kroha delayed in submitting the L&I form

17  after Plaintiff completed his portion of the form.

18     The evidence, viewed in the light most favorable to Plaintiff, shows Plaintiff's L&I claim

19  was not submitted immediately after he was seen by Defendant Kroha for his work-related

20  injury. However, Defendant Kroha did not intentionally or with deliberate indifference delay in

21  submitting the L&I form. Therefore, Plaintiff has failed to overcome Defendants' summary

22  judgment showing that there is no genuine issue of material fact as to the allegations that

23  Defendant Kroha acted with deliberate indifference in her submission of Plaintiff's L&I claim.

24

REPORT AND RECOMMENDATION - 16

1         ii.  Defendant Fetroe

2        Plaintiff contends Defendant Fetroe is liable under § 1983 because, as Defendant Kroha's

3 supervisor, he should have known Defendant Kroha delayed in submitting the L&I claim. *See*

4 Dkt. 40, pp. 12-13. Section 1983 supervisory liability cannot be based on *respondeat superior*.

5 *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A § 1983 action

6 may not be brought against a supervisor on a theory that the supervisor is liable for the acts of his

7 or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Further, to state a

8 claim against any individual Defendant, Plaintiff must allege facts showing the individual

9 Defendant participated in or directed the alleged violation, or knew of the violation and failed to

10 act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied,

11 525 U.S. 1154 (1999). Because vicarious liability is inapplicable to a § 1983 suit, Plaintiff must

12 plead each Defendant, through his or her own individual actions, has violated Plaintiff's

13 constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

14        Here, the evidence shows Defendant Fetroe first met with Plaintiff on March 8, 2016 for

15 treatment for Plaintiff's umbilical hernia. There is no evidence Defendant Fetroe had knowledge

16 of Plaintiff's work-related injury prior to the submission of the L&I claim, which occurred on

17 January 28, 2016. At most, Plaintiff has submitted conclusory statements that Defendant Fetroe

18 should have known or that it is reasonable to assume he did know Defendant Kroha delayed in

19 filing the L&I claim. *See* Dkt. 39, Plaintiff Dec.; Dkt. 40. These conclusory statements are

20 insufficient to show Defendant Fetroe was deliberately indifferent to Plaintiff's serious medical

21 need. *See Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague

22 and mere conclusory allegations unsupported by facts are not sufficient to state section 1983

23 claims). Furthermore, there are no allegations or evidence showing Defendant Fetroe participated

24

1  in or directed Defendant Kroha to delay in filing the L&I claim. There is also no evidence

2  showing Defendant Fetroe was aware of Plaintiff's L&I claim until after the claim was submitted

3  to L&I. Therefore, Plaintiff has failed to overcome Defendants' summary judgment showing that

4  there is no genuine issue of material fact regarding the allegations that Defendant Fetroe acted

5  with deliberate indifference when submitting Plaintiff's L&I claim.

6        b.   Deliberately Indifferent Treatment

7        While unclear in the Amended Complaint, Plaintiff may be alleging the treatment

8  provided by Defendants violated his constitutional rights. *See* Dkt. 14. The evidence, viewed in

9  the light most favorable to Plaintiff, shows that Defendants Kroha and Fetroe diagnosed Plaintiff

10  with an unincarcerated umbilical hernia. They did not observe Plaintiff to be in any pain or

11  distress. When Defendant Kroha first examined Plaintiff on June 3, 2015, she diagnosed Plaintiff

12  with a reducible, unincarerated hernia. She directed Plaintiff to return to the medical department

13  if he experienced nausea or vomiting, was unable to reduce the hernia, or if the hernia became

14  larger. She also limited his lifting. Plaintiff did not return to the medical department for his

15  hernia until March 8, 2016 -- over nine months -- when he was called by Defendants for an

16  examination related to his L&I claim. At that time, Plaintiff did report pain and blood in his stool

17  and, in response, Defendant Kroha ordered objective testing, which showed normal results. The

18  evidence shows Plaintiff never requested pain medication from or returned to the medical

19  department when he began experiencing pain related to his hernia.

20        While Plaintiff provided evidence that his surgeon found the hernia to be incarcerated

21  three months after Defendants examined Plaintiff, there is no evidence Defendants were aware

22  that Plaintiff's hernia was incarcerated and required different or additional treatment. At most,

23  the evidence shows Defendants Kroha and Fetroe may have been negligent in failing to diagnose

24

1    an incarcerated hernia. However, as stated above, "[m]ere negligence in diagnosing or treating a

2    medical condition, without more, does not violate a prisoner's Eighth Amendment rights."

3    *Hutchinson*, 838 F.2d at 394.  As negligence is not sufficient to show deliberate indifference

4    under the Eighth Amendment, Plaintiff has failed to overcome Defendants' summary judgment

5    showing that there is no genuine issue of material fact regarding the claim that Defendants acted

6    with deliberate indifference when they provided treatment for Plaintiff's hernia.

7                    c.    Failure to Follow DOC Policy

8         Plaintiff alleges Defendants violated his constitutional rights when they failed to follow a

9    DOC policy that states DOC will pay for transportation and custody costs for L&I claims

10   originating from a work-related injury when the DOC is the employer. *See* Dkt. 14, p. 10-11.

11   Importantly, the alleged failure to follow a prison policy does not establish a federal

12   constitutional violation. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009);

13   *Manzanillo v. Jacquez*, 555 F. App'x. 651, 653 (9th Cir. 2014) (allegations that a defendant

14   violated prison policy "does not constitute a violation of a federal right"). As Plaintiff alleges

15   only that Defendants violated a DOC policy, he has failed to state a constitutional violation.

16        Additionally, there is no evidence showing Defendants failed to follow DOC policy.

17   Defendant Kroha testified that after she informed Plaintiff that DOC would not pay for

18   transportation and security, she learned she was incorrect. Plaintiff's consultation appointments

19   and surgery were approved by the Care Review Committee. The evidence shows Defendants

20   misinformed Plaintiff about the DOC's policy regarding payment of transportation and security

21   costs. However, there is no evidence Defendants acted with deliberate indifference when they

22   misinformed Plaintiff. Further, there is no evidence showing Plaintiff was injured as a result of

23

24

1  the misinformation because he was not required to pay for transportation or security costs and it

2  did not impede his ability to have his hernia repaired.

3          As Plaintiff has failed to allege a constitutional violation and as the evidence fails to

4  show Defendants failed to follow the DOC policy, Plaintiff's claim that Defendants failed to

5  follow a DOC policy should be denied.

6          4.  *Conclusion*

7          Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no

8  genuine issue of material fact regarding whether Defendants acted with deliberate indifference to

9  Plaintiff's serious medical needs by: delaying the submission of Plaintiff's L&I claim following a

10  work-related injury, providing inadequate treatment for Plaintiff's hernia, or failing to follow DOC

11  policy. Accordingly, the Court recommends summary judgment be granted in favor of Defendants

12  as to these claims.

13          C.  <u>Failure to State a Claim</u>

14          In his Amended Complaint, Plaintiff also appears to allege Defendants are liable because

15  they made threating statements to Plaintiff in an effort to stop his treatment. *See* Dkt. 14. Plaintiff

16  states he perceived Defendants statements that the DOC would not pay for his hernia surgery or

17  transportation and security related to the surgery to be threats. Dkt. 39, Plaintiff Dec., ¶ 21.

18  Generally speaking, allegations of verbal threats and/or verbal harassment alone are insufficient

19  to state an Eighth Amendment claim. *See Farmer,* 511 U.S. at 834; *Rhodes,* 452 U.S. at 347;

20  *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1992). The Ninth Circuit has expressly held that "it

21  trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong." *Gaut*

22  *v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987) (finding a prisoner's claim against prison guard for

23  threatening physical violence not a sufficient deprivation to warrant protection by the Eighth

24

REPORT AND RECOMMENDATION - 20

1  Amendment); *see also Corales v. Bennett,* 567 F.3d 554, 564–565 (9th Cir.2009) (upholding and

2  applying *Gaut* for the principle that mere threats cannot demonstrate constitutional deprivation).

3     Here, Plaintiff contends he interpreted statements made by Defendants that DOC would

4  not pay for his surgery or transportation and security related to the surgery as threats. Dkt. 39,

5  Plaintiff Dec., ¶ 21. As threats and verbal harassment do not constitute a constitutional violation,

6  Plaintiff has failed to state an Eighth Amendment claim based on Defendants' allegedly

7  threatening statements regarding DOC's refusal to pay for his surgery. Accordingly, the Court

8  recommends Plaintiff's claim that he was verbally threatened be dismissed.

9  **IV.    Conclusion**

10    For the above stated reasons, the Court finds Plaintiff failed to exhaust his administrative

11 remedies regarding the claim that Defendant Kroha falsified Plaintiff's medical records. The

12 Court finds Plaintiff exhausted his administrative remedies regarding his claim that Defendants

13 acted with deliberate indifference when they failed to timely submit his L&I claim. However,

14 Plaintiff has failed to overcome Defendants' summary judgment showing that no genuine issue

15 of material fact exists regarding the claims that Defendants acted with deliberate indifference to

16 Plaintiff's serious medical needs by: delaying the submission of Plaintiff's L&I claim following a

17 work-related injury, providing inadequate treatment for Plaintiff's hernia, and failing to follow

18 DOC policy. The Court also finds Plaintiff failed to state a claim for which relief can be granted

19 as to the allegations that Defendants verbally threatened Plaintiff. Therefore, the Court

20 recommends Defendants' Motion for Summary Judgment (Dkt. 25) be granted and this case be

21 closed.

22    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

23 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

24

6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 13, 2018, as noted in the caption.

Dated this 29th day of March, 2018.

David W. Christel
United States Magistrate Judge